Bissell, P. J.,
delivered the opinion of the court.
The appellee Saulcey was hurt while walking along Thirteenth street, between Market and Blake, on the west side of Cherry creek in the city of Denver. At that point the walk was apparently a double plank walk, and one of the boards on .the end of the walk had either been broken or removed, and left a hole the width of one plank, from eight to twelve inches deep. One evening in the month of October, 1890, about nine o’clock, Saulcey was going to his room, stepped into the hole with his left foot, was thrown over and fell on the edge of the walk, where there was a slight difference in the elevation between the two parts on the same' way. He was somewhat injured about the side -and about *421 the foot, was compelled to submit to medical treatment for his trouble, was out of work for sometime, and proved sufficient injuries to entitle him to recover what he did, if he otheiuvise satisfied the law in making his proof. When the accident happened, Saulcey was in the émploy of the city under the assistant street commissioner, and was daily in the habit of going from his place at the city hall to his room, and crossing along the street where the accident happened. It occurred at nine o’clock in the evening, and there is nothing in the evidence otherwise than by the absence of proof to the contrary to show that Saulcey was exercising any kind of care to avoid injury, or to observe the road over which he was walking. The city had no actual notice of the existence of the defect. None of its officers had been told of hy-n'or was it made to appear that any of them had acquired information about it. No evidence was given to show that the defect had existed for any length of time whereby knowledge could be presumed to have been brought home to the city. Nobody seems to have known anything about it, and if the hole was there before the day of the accident, it is probable the defect had not existed more than two or three days. The city charter provides that before the city can be made liable for injuries which may happen to any person on the highways of the city, the person injured must give written notice to either the mayor or city council within thirty days after the injury is received. The charter, of course, provides the general contents of the notice, but those matters are unimportant here. In his complaint the plaintiff charged the giving of the notice, set it out in Time verba, and alleged that he had served it in the way provided for by the charter. On the trial, however, the only' service, if any, which the plaintiff proved or attempted to prove, was the handing of the notice to one of the aldermen in the city hall. Plaintiff insists that at the time he gave it to the alderman, the mayor was in the room and the notice was read; but whether it came thereby to the mayor’s knowledge he does not undertake to say. He is not borne out in this statement, however, and both the *422 alderman and the mayor deny the transaction, and it is safe to assume that there was no such occurrence whereby any kind of a service can be held to have been made on the mayor of the city. As to the giving of the notice to the alderman, if, upon the conflicting testimony we should hold the jury entitled to conclude the service was made, it still leaves the question to be hereafter discussed whether that service would, in any event, be sufficient. On this proof Saulcey got judgment and the city appealed. The appellee is unrepresented, and we are not aided in our investigations by any brief on his part.
The charters of nearly all cities contain a provision like that found in the charter of this city. In providing satisfactory plans for municipal government, it seems to have been found expedient to attach this requirement as a condition precedent to the general right which the injured person is given to recover damages for such alleged wrongs. Since the right to sue the city is a matter of statute, lawmakers have the undoubted right to require the observance of these reasonable conditions. Wherever similar provisions have come before the courts for construction, it has been almost if not quite universally held that the giving of the notice in the form and in the manner prescribed is a condition precedent, without which the plaintiff may not maintain his action. Reining et al. v. City of Buffalo, 102 N. Y. 308; Wentworth v. Town of Summit, 60 Wis. 281; Gay v. The City, 128 Mass. 887.
The notice must not only contain all the things the statute requires, but it must be served on the persons which the law designates, and in the way specified, if the statute be specific in this particular. Accordingly, the courts have holden that where a written notice is required to be served at a specified time and in the manner pointed out, the requirement must be exactly followed, and the notice may not be partially in writing and partially oral, although the two taken together, if held to be within the statutory requirements, would be ample to protect the plaintiff’s rights. Veazie v. City of *423 Rockland, 68 Me. 511; Shea v. City of Lowell, 132 Mass. 187.
The importance of making the service on the proper person has been a matter of judicial consideration, and it has accordingly been adjudged that where the service must be upon a trustee or upon a mayor or upon a council, service upon the clerk, even though he be one of the principal officers of the corporation, is not such a compliance with the provision as to permit the maintenance of the suit. Nichols v. The City of Boston, 98 Mass. 39; Underhill v. The Town of Washington, 46 Vt. 767; Wade on the Law of Notice, secs. 1312, 1313.
Oil the basis of these authorities, it is very easily demonstrable that the plaintiff did not perform this condition precedent. His notice was probably sufficient in form and contained all that the statute required in order to bring him within its limits. The plaintiff failed to serve it on either the mayor or the city council. His neglect of this requirement is as fatal as would be the failure to give the notice. The object of the statute is to advise the executive officers of the city of the fact of the injury and of the claims made by the injured person, that they may investigate the matter,.and while the circumstances are fresh and the evidence easily acquired, ascertain what, if any, responsibility ought to be assumed by the city. Handing a notice of this sort to an alderman is not a service on the city council within the meaning of the statute, nor can the city be charged in such loose methods when the law requires the notice to be served upon the council itself. The service on the mayor would be an exact and very proper equivalent, since he is the chief executive officer of the city, and the law would presume that the city authorities would be fully advised of whatever was brought to his executive knowledge. It is not necessary to decide whether, in case an attempt is made to serve it upon the city council, service should be made upon each one of its members ; but evidently handing it to a single alderman is not that service which the law contemplates. If it were *424 necessary for the purposes of this decision to reach a conclusion concerning it, we should be of the opinion on the record that the plaintiff failed to prove a service on anybody. But since the case must go back for a new trial, we prefer to leave this question entirely open, that it may be submitted to the jury upon precise instructions regarding this particular proposition. Had the jury been aptly and directly instructed on this point, and had they found the facts otherwise, we might not be inclined to interfere on this matter of service. 'The jury, however, were left wholly uninstructed as to the law upon this proposition, and their general verdict can scarcely be held to include a finding respecting it.
The case was not wholly tried upon a correct hypothesis, and the jury were left uninformed as to the legal rights of the plaintiff, and the responsibilities of the city with reference to defective sidevvalks. It is quite possible the result would have been different if they had been correctly and aptly advised on the law with reference to this matter. It is not true that the city is responsible for all accidents which may occur on the public streets. A cause of action does not necessarily arise from every injury which a person may sustain by reason of a defective sidewalk. Negligence is always the gist of this action. The plaintiff must show not only the defect, but that it was negligence on the part of the city to permit the defect to remain. To bring about this result he must prove either that the city, through its authorities, had actual knowledge of its existence, or that they had a constructive notice, which will come from its character, the time it has existed, and various other considerations which readily occur when this subject is under discussion. Dillon on Municipal Corporations, secs. 1025-1027.
The jury were not told what the law was in this particular, and they were left to consider the case on the general hypothesis only that when both the accident and the defect were proven the city was presumably liable for the injury. .The court was not sufficiently conservative and exact in its statement, and, if for no other reason, the case must have *425 been reversed for this error. We do not deem it necessary to review the instructions, for the law is so well established that it is enough to call the court’s attention to it to insure the avoidance of a like error upon a subsequent trial.
For these errors the judgment of the court below must be reversed, and the case remanded for a new trial in conformity with this opinion.

Reversed.